# In the United States Court of Federal Claims

No. 20-1481C

(Filed: February 15, 2022)

**FOR PUBLICATION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JONATHAN H. THOMASSEE,     \*

    \*

        Plaintiff,     \*

    \*

v.     \*

    \*

THE UNITED STATES,     \*

    \*

        Defendant.     \*

    \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Jason Ellis Perry*, Law Office of Jason Perry, LLC, Wellington, FL, for Plaintiff.

*Richard P. Schroeder*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for Defendant, United States. With him on briefs were *Brian A. Boynton*, Acting Assistant Attorney General, *Martin F. Hockey, Jr.*, Acting Director, *Elizabeth M. Hosford*, Assistant Director, as well as *Major Scott W. Medlyn*, Military Personnel Litigation Branch, Civil Litigation Division, United States Air Force.

## OPINION AND ORDER

Plaintiff Jonathan H. Thomassee, a disabled former member of the U.S. Air Force, challenges a decision by the Air Force Board for the Correction of Military Records ("AFBCMR" or "Board") that refused an increase in his disability rating. After the parties cross-moved for judgment on the administrative record,[1] the government changed its position, instead seeking a remand for the Board to reopen Plaintiff's request, accept new evidence, and reconsider its decision.[2] Plaintiff objects to remand and maintains that he is entitled to judgment.[3]

It appears that remand is the proper course, notwithstanding Plaintiff's contrary arguments. The matter is therefore **REMANDED** to the AFBCMR for further proceedings as described below.

---

[1] Def.'s Mot. for J. on the Administrative R. (ECF 13) ("Def.'s MJAR"); Pl.'s Cross-Mot. for J. on the Administrative R. & Resp. (ECF 17) ("Pl.'s MJAR").

[2] Def.'s Resp. & Reply (ECF 26) ("Def.'s R&R").

[3] Pl.'s Reply (ECF 27).

## BACKGROUND

### I. The Disability Retirement Process

A military service member may receive disability retirement if the secretary of his branch finds that he is "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay[,]" and also that:

> (1) based upon accepted medical principles, the disability is of a permanent nature and stable;
>
> (2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and
>
> (3) [*inter alia*] —
>
>> …
>>
>> (B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs [("VA")] at the time of the determination; and …
>>
>>> (iv) the disability was incurred in line of duty after September 14, 1978.

10 U.S.C. § 1201(a)–(b); *see also* 10 U.S.C. § 101(a)(9).

"'Fit' and 'Unfit' are terms of art[.]" *O'Brien v. United States*, 120 Fed. Cl. 85, 93 (2015). A service member will be considered unfit "when the evidence establishes that the member, due to disability, is unable to reasonably perform duties of his or her office, grade, rank, or rating, including those during a remaining period of Reserve obligation." *See* Department of Defense Instruction ("DoDI") 1332.18, Appx. 2 to Encl. 3, § 2.a (Aug. 5, 2014); *see also* Air Force Instruction ("AFI") 36-3212 § 8.20 (Feb. 2, 2006) (providing that "[t]he sole standard to be used in making determination of unfitness due to physical disability shall be unfitness to perform the duties of the member's office, grade, rank or rating because of disease or injury").[4]

Under Department of Defense ("DoD") policy, members who are potentially unfit are processed through the Disability Evaluation System ("DES") after referral by the secretary of their military branch. *See* DoDI 1332.18, Appx. 1 to Encl. 3, § 1; *see also* AFI 36-3212 § 1.1. The Integrated Disability Evaluation System ("IDES"),

---

[4] This Opinion cites the versions of DoDI 1332.18 and AFI 36-3212 in effect when the events underlying this case occurred. Those versions have since been superseded. *See* DoDI 1332.18 (May 17, 2018); AFI 36-3212 (Dec. 4, 2020).

the version of the DES applicable to this case, is a "joint DoD-VA process by which DoD determines whether ill or injured Service members are fit for continued military service and DoD and VA determine appropriate benefits for Service members who are separated or retired for disability." DoDI 1332.18 at 53.

The first stage of the IDES is a Medical Evaluation Board ("MEB"), charged with making a preliminary determination of the medical status and duty limitations of referred individuals. *See id.* at Encl. 3, § 2.a. When an MEB determines that an individual "cannot perform the duties of his office, grade, ranking, or rating," the MEB will refer the case to a Physical Evaluation Board ("PEB"). *Id.* at § 2.d.

The PEB is charged with determining whether members are unfit. *Id.* at § 3.a. Once a PEB determines a member is unfit, it assigns a percentage rating to the medical defects or conditions "which make [the] member unfit for continued military service." *See* AFI 36-3212 §§ 1.7, 1.9. The PEB must apply the percentage ratings set out in the VA's Schedule for Ratings Disabilities ("VASRD") as well as implementation guidance in DoDI 1332.39. *See id.*; DoDI 1332.18, Encl. 3, §§ 3.a, 3.j(2); *see generally* 10 U.S.C. §§ 1201(b)(3)(B), 1203(b).

The PEB process has three components: first, an Informal Physical Evaluation Board ("IPEB"); second, a Formal Physical Evaluation Board ("FPEB"); and third, appellate review of FPEB findings. *See* DoDI 1332.18, Encl. 3, § 3.a; AFI 36-3212 § 3.1. IPEBs make initial determinations of fitness for duty by reviewing appropriate medical and personnel records without the presence of the service member or his counsel. AFI 36-3212 § 3.33. A service member who objects to the IPEB determination may rebut its report directly or request an additional stage of review before an FPEB. *See* DoDI 1332.18, Encl. 3, § 3.b. In contrast to the IPEB, the FPEB offers applicants the opportunity for a hearing where they may appear in person, obtain representation by counsel, and present evidence. *See* DoDI 1332.18, Encl. 3, § 3.h; AFI 36-3212 § 3.38. Finally, the service member can appeal the FPEB's findings to obtain review by his military department. *See* DoDI 1332.18, Encl. 3, § 3.l; AFI 36-3212 § 5.4.1.

When a member is entitled to disability retirement, a statutory formula governs calculation of his benefits. *See* 10 U.S.C. §§ 1201(a), 1401, 1406, 1407, 1409, 9361. A higher VASRD disability rating generally corresponds to a larger medical retirement benefit. *See* 10 U.S.C. §§ 1401(a), 1409, 9361.

An Air Force member who believes he has been erroneously denied his full entitlement to disability retirement benefits may petition the AFBCMR to correct his military record. *See Chambers v. United States*, 417 F.3d 1218, 1220–21 (Fed. Cir. 2005) (discussing the AFBCMR's Army counterpart). The AFBCMR grants relief upon finding an error or injustice. 10 U.S.C. § 1552(a)(1). The AFBCMR may also

"make a disability determination in the first instance." *Barnick v. United States*, 80 Fed. Cl. 545, 558 (2008) (citing *Sawyer v. United States*, 930 F.2d 1577, 1581 (Fed. Cir. 1991)). Members who are dissatisfied with the decision of the AFBCMR may obtain judicial review. *Chambers*, 417 F.3d at 1224–25.

## II. Facts

Mr. Thomassee is a former lieutenant colonel in the United States Air Force. Administrative Record ("AR") 205, 240. The following facts are most germane to his claims.

Mr. Thomassee's commander determined in early 2016 that Mr. Thomassee's physical condition prevented him from performing his duties. AR 24–28. The commander's report, together with a formal narrative summary describing several medical evaluations, AR 17–23, initiated the IDES process. An MEB convened that summer confirmed diagnoses of ankylosing spondylitis[5] and cystic kidneys, and accordingly referred Mr. Thomassee to an IPEB. AR 88.

The IPEB agreed with the MEB's diagnoses and determined that Mr. Thomassee's ankylosing spondylitis was an unfitting condition incurred in the line of duty while he was entitled to basic pay. AR 87. But it determined that his cystic kidneys constituted a "condition[] that can be unfitting but [is] not currently unfitting." *Id.* The IPEB then requested a disability rating from the VA. AR 86. On September 4, 2016, the VA proposed a disability rating of 10 percent for his ankylosing spondylitis and 30 percent for his kidneys. AR 83–85. The VA also diagnosed Mr. Thomassee with rheumatoid arthritis (among other conditions), but determined it was not service-related. AR 85.

Because the IPEB qualified only his ankylosing spondylitis, and not his cystic kidneys, as unfitting conditions, the VA's proposal left Mr. Thomassee below the 30 percent threshold for disability retirement. *See* 10 U.S.C. § 1201(a)–(b). Under Air Force regulations, "[e]ligibility for disability benefits is based only on compensable defects or conditions." *See* AFI 36-3212 § 3.28. Only unfitting conditions are compensable. *See id.* at 79. "A member whose compensable disability rating is less than 30 percent and who," like Mr. Thomassee, "has less than 20 years of creditable service" is entitled to severance pay, but not disability retirement. *See id.* at A2.5, A2.6. The IPEB recommended discharge with severance pay for Mr. Thomassee. AR 81.

---

[5] One case has described ankylosing spondylitis as "a systemic illness of unknown etiology, affecting young persons predominantly, and producing pain and stiffness as a result of inflammation of the sacroiliac, intervertebral, and costovertebral joints[.]" *Wollman v. United States*, 108 Fed. Cl. 656, 658 n.2 (2013) (quoting *Dorland's Illustrated Medical Dictionary*, 1779 (31st ed. 2007)).

Mr. Thomassee therefore requested a hearing before the FPEB, which agreed that Mr. Thomassee's cystic kidneys were unfitting as well. AR 79–80. The FPEB thus recommended permanent retirement with a combined disability rating of 40 percent.[6] AR 78. The FPEB considered the other conditions rated by the VA, but did not determine that any were unfitting. AR 79. Mr. Thomassee signed a form acknowledging that he "agree[d]" with the findings of the FPEB and did not seek reconsideration. AR 77.

On March 28, 2017, after almost 17 years of active service, Mr. Thomassee was retired for permanent disability with a compensable disability percentage of 40 percent. AR 75. He was honorably discharged and placed on the permanent disability retired list. AR 76.

In parallel with his efforts to obtain medical retirement, Plaintiff filed a claim for VA disability benefits. Although the record does not make clear exactly what Mr. Thomassee claimed or how the VA reasoned, on October 17, 2017 the VA issued a disability rating decision that differed from its 2016 proposal. AR 240. Among other changes, the VA increased its ratings for some of Mr. Thomassee's medical conditions: his rating for ankylosing spondylitis (which the VA combined with his claims for arthritis) increased from 10 to 20 percent, AR 241, 245, and his cystic kidneys rating increased from 30 to 40 percent, AR 240, 244. The VA also "sympathetically inferred" a claim for psoriasis from Mr. Thomassee's claim for psoriatic arthritis, and assigned a 60 percent rating. AR 242–43; *see also* AR 245. The report noted that "additional evaluations are due for … psoriasis with psoriatic arthritis being included in the back." AR 256.

### III. <u>Procedural History</u>

Mr. Thomassee petitioned the AFBCMR alleging "material errors of fact made during the medical retirement process." AR 7. Relying on the 2017 VA decision, his application sought an increase of his disability rating from 40 to 75 percent, along with the inclusion of psoriatic arthritis as an unfitting condition. *Id*. The AFBCMR obtained an advisory opinion from the Air Force Personnel Center Disability Office ("AFPC"), AR 239, and received briefing from Mr. Thomassee. AR 281.

The AFBCMR found insufficient evidence of material error or injustice in Mr. Thomassee's PEB disability rating and denied his application in a single curt paragraph. The AFBCMR "concur[red] with the rationale and recommendation" of

---

[6] Calculating a combined disability rating for a service member's multiple conditions is not as simple as summing individual ratings for distinct conditions. The formula for calculating combined ratings, which involves "consideration of the efficiency of the individual" from most to least disabling condition, is contained in 38 C.F.R. § 4.25.

the AFPC advisory opinion, which had concluded that a VA decision "months after separation from service does not warrant a change in the total compensable rating awarded at the time of the applicant's separation." AR 4. The AFBCMR dismissed Mr. Thomassee's response with an unelaborated statement that he had "not provided sufficient evidence to support his uncorroborated opinions." *Id*. As for Mr. Thomassee's arguments related to psoriatic arthritis, the Board stated that while the VA had indeed "rescinded the denial of rheumatoid arthritis and included it as part of the applicant's back condition, along with psoriatic arthritis, neither of these conditions were found to be individually unfitting conditions." *Id.*

Plaintiff filed suit in this Court and the parties filed cross-motions for judgment on the administrative record. In its response to Plaintiff's motion, however, the government withdrew its motion for judgment. Instead — although it did not confess error — the government requested a remand for the AFBCMR to "(a) reopen the record; (b) allow plaintiff to submit additional information; (c) obtain any additional advisory opinions or information the board believes would assist it; (d) reconsider its earlier decision; and (e) issue a new decision setting forth the board's analysis." Def.'s R&R at 1. Defendant identifies several aspects of the AFBCMR's original decision that might call for correction on remand. Plaintiff, for his part, objects to remand and maintains that he is entitled to judgment.

## DISCUSSION

### I. Jurisdiction

To reach the merits of the case, I must first determine that the Court has jurisdiction over Mr. Thomassee's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). I conclude that jurisdiction exists.

Mr. Thomassee's claims fall within this Court's Tucker Act jurisdiction. *See* 28 U.S.C. § 1491(a)(1). The Tucker Act does not create a substantive right of action, *United States v. Testan*, 424 U.S. 392, 398 (1976), so a party seeking to bring a Tucker Act suit in this Court must point to a money-mandating statute or regulation. *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983). Mr. Thomassee's claims arise under 10 U.S.C. § 1201, which is a money-mandating statute. *See Fisher v. United States*, 402 F.3d 1167, 1174 (Fed. Cir. 2005) (citing *Sawyer*, 930 F.2d 1577). As the allegedly aggrieved party, Mr. Thomassee has standing to bring those claims.

Mr. Thomassee's claims also must meet jurisdictional requirements for timeliness. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132 (2008). All claims before this Court are barred if filed more than six years after the claim first accrues. 28 U.S.C. § 2501. Generally, the six-year statute of limitations on a disability pay case runs from "[t]he decision by the first statutorily authorized board

that hears or refuses to hear the claim[.]"[7] *Chambers*, 417 F.3d at 1224; *see Friedman v. United States*, 310 F.2d 381, 396 (Ct. Cl. 1962); 28 U.S.C. § 2501. The earliest events relevant to this case occurred in 2016 and 2017, around the time of Mr. Thomassee's discharge, and he filed suit in 2020. His claims are therefore timely.

## II.  <u>Merits</u>

The Federal Circuit has explained that an agency "may request a remand (without confessing error) in order to reconsider its previous position," including, for example, "to consider further the governing statute, or the procedures that were followed," or to address "doubts about the correctness of its decision or that decision's relationship to the agency's other policies." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). A reviewing court has discretion whether to order remand for agency reconsideration. "A remand may be refused if the agency's request is frivolous or in bad faith. … Nevertheless, if the agency's concern is substantial and legitimate, a remand is usually appropriate." *Id.*[8] Requests for reconsideration "should be treated as with any other motion affecting the substantial rights of the plaintiff, by subjecting the government's position to careful analysis to ensure that the motion is properly supported and justified." *Rahman v. United States*, 149 Fed. Cl. 685, 690 (2020).

Here, the government requests a remand for the Board to address several specific concerns about its decision. First, the government agrees that the Board "did not thoroughly explain its rationale" for disregarding the VA's 2017 rating, and suggests that remand will allow the Board to "reconsider [Mr.] Thomassee's request for a higher rating and to discuss in detail the board's views on the relevance, weight, and significance of the [VA's] October 2017 decision." Def.'s R&R at 5. Second, the government intends for the Board to "reconsider" its statement that Mr. Thomassee had not provided evidence to support his argument that procedural errors infected the PEB decision. *Id.* at 6. Third, the government recognizes that the Board's decision did not "include a detailed discussion" of Mr. Thomassee's diagnoses or "explain the significance of its finding that the conditions were not unfitting when considered

---

[7] An exception applies when "the veteran's knowledge of the existence and extent of his condition at the time of his discharge [is] sufficient to justify concluding that he waived the right to board review of the service's finding of fitness by failing to demand a board prior to his discharge." *Chambers*, 417 F.3d at 1226 (quoting *Real v. United States*, 906 F.2d 1557, 1562 (Fed. Cir. 1990)).

[8] The meaning of "substantial and legitimate" is unsettled, although Judge Solomson has adopted the Court of International Trade's three-part test. *See Keltner v. United States*, 148 Fed. Cl. 552, 564 (2020) (suggesting that grounds for remand are substantial and legitimate where "1) the agency provided a compelling justification for its remand request, 2) the need for finality does not outweigh the justification for voluntary remand presented by the agency, and 3) the scope of the agency's remand request is appropriate") (alterations and quotes omitted).

individually." *Id.* at 7. Those three concerns appear "substantial and legitimate" by any standard. *See SKF USA Inc.*, 254 F.3d at 1029.

Mr. Thomassee objects to remand mainly because (he argues) the government took too long to decide to seek a remand, acted in bad faith, and might not reach a different conclusion. *See* Pl.'s Reply at 5. Those arguments overlook several considerations.

First, the government's remand request is not untimely, and there is no evidence of bad faith. Although it would have been preferable for the government to seek remand earlier, it is not improper in this case to seek remand, on the terms the government suggests, after its motion for judgment on the administrative record and in response to Plaintiff's cross-motion. The procedural history of this case gives no reason to lock the government into litigation over the merits after it comes to the government's attention that an agency's decision should be revisited and where relief on remand is possible.

Second, even if Mr. Thomassee *prevailed* on his motion for judgment on the administrative record, the remedy would likely be a remand with instructions for the agency to reconsider and explain its reasoning. *See Rahman*, 149 Fed. Cl. at 690. As the Supreme Court has long explained, "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also, e.g.*, *Nyan v. United States*, 154 Fed. Cl. 463, 467 (2021) (citing *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16–17 (2002), and *Strand v. United States*, 706 F. App'x 996, 1000 (Fed. Cir. 2017)). Either way, the Board would likely have the first opportunity to reconsider its decision.

Third, although remand may not be appropriate when (for example) the result of a potential remand is a foregone conclusion, *see Diversified Maint. Sys., Inc. v. United States*, 74 Fed. Cl. 122, 127 (2006) (collecting cases), or "when the government's primary goal on remand is to write a better decision for a predetermined outcome," *Keltner v. United States*, 148 Fed. Cl. 552, 565 (2020), that does not seem to be the situation here. Although some aspects of the government's argument could be interpreted as asking for another bite at the apple, the government also evinces an intention to reconsider its earlier decision. *Id.* at 563 ("[W]here an agency requests a remand without confessing error, the agency must express some intent to reconsider the original agency decision that is the subject of the legal challenge[.]").

It may be easy for the government to "express some intent to reconsider" a decision without actually meaning to follow through. *Id.* But as explained, the government's plans for remand are reasonable and there is no evidence of bad faith.

In addition, administrative law principles limit the government's ability to abuse the system. Joshua Revesz, *Voluntary Remands: A Critical Reassessment*, 70 Admin. L. Rev. 361, 368 (2018) ("A voluntary remand is not a license to skirt the requirements of the APA."). When an agency takes remand as an opportunity to "offer a fuller explanation of the agency's reasoning at the time of the agency action," it may "elaborate" on the "reasons" for its original decision, "but [it] may not provide new ones." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1908 (2020) (quotes and emphasis omitted). Those reasons ultimately must stand on their merits in light of the record, even if explained in more detail.

Here, furthermore, the government proposes that on remand the AFBCMR may seek a new advisory opinion and that Mr. Thomassee will be able to submit new evidence. Def.'s R&R at 1. Whatever decision the Board reaches will be based on a new record, and will therefore have to "comply with the procedural requirements for new agency action." *Regents of the Univ. of California*, 140 S. Ct. at 1908. The AFBCMR may not simply restate its old decision, because it will have to grapple with new facts. If it does not "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made," its reconsidered decision will be set aside as arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotes omitted).

Fourth, although courts have sometimes refused to remand when the record is clear enough to permit a judicial decision, *see, e.g.*, *Keltner*, 148 Fed. Cl. at 568, this is not such a case. As discussed above, the exact nature of Mr. Thomassee's diagnoses and disability claims — and their relationship to each other — is not always plain in the record. Rather, Mr. Thomassee, DoD, and the VA have presented and analyzed diagnoses of conditions such as psoriasis, psoriatic arthritis, rheumatoid arthritis, and ankylosing spondylitis in different ways at different times. Their explanations have been limited, and often vague or imprecise. The record is therefore insufficient for me to resolve important factual questions in the first instance. On remand, all concerned will have the opportunity to clarify the facts.

## CONCLUSION

For the foregoing reasons, the motions for judgment on the administrative record are **DENIED**. Pursuant to RCFC 52.2, the matter is hereby **REMANDED** for six months to the AFBCMR for further consideration.

On remand, the AFBCMR shall (1) reopen the record; (2) allow Plaintiff to submit additional evidence and argument; (3) obtain any additional advisory opinions or information it believes would assist it; (4) reconsider its earlier decision; and (5) issue a new decision. The AFBCMR shall consider, among any other issues it deems relevant or that Plaintiff raises, the significance of the VA's October 2017 decision, evidence of procedural errors during the PEB, and the nature, relationship, and significance of Plaintiff's diagnoses.

This case shall be **STAYED** pending a decision by the AFBCMR. The government is **ORDERED** to submit a status report every 90 days, beginning on **May 16, 2022**, detailing the progress of Mr. Thomassee's petition. The parties shall file the notices required by RCFC 52.2(e) within 30 days of the AFBCMR's final decision.

The Clerk is directed to serve a certified copy of this order on the AFBCMR at 1500 West Perimeter Road, Suite 3700, Joint Base Andrews NAF, Maryland 20762. *See* RCFC 52.2(b)(2).


**IT IS SO ORDERED.**

s/ Stephen S. Schwartz   
STEPHEN S. SCHWARTZ
Judge